JAMES A. PITTMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pittman v. Commissioner
Docket No. 21518-92
United States Tax Court
T.C. Memo 1995-243; 1995 Tax Ct. Memo LEXIS 246; 69 T.C.M. (CCH) 2799; June 5, 1995, Filed *246 Decision will be entered under Rule 155. For petitioner: Robert E. Meldman. For respondent: Steven R. Guest and George W. Bezold. DAWSON, ARMEN
DAWSON; ARMEN
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax for the taxable years 1986 and 1987 as follows: Additions to Tax Sec. Sec. Sec. Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661(a)
1986
$ 35,488
$ 26,616
[1]
$ 8,872
1987
32,818
24,614
[2]
8,205
*247 After concessions by petitioner, [2] the issues remaining for decision all implicate petitioner's relationship with Bee Bus Lines, Inc. (BBL), a closely held corporation. Those issues are as follows: (1) Whether petitioner received, and failed to report, constructive dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 67,241 and $ 79,036, respectively, based upon the diversion of corporate receipts from Heritage Christian Schools; (2) whether petitioner received, and failed to report, constructive dividends from BBL during the taxable year 1987 in the amount of $ 8,000 based upon the diversion of corporate receipts from BBL's Park State Bank account; (3) whether petitioner received, and failed to report, constructive dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 3,896 and $ 2,924, respectively, based upon BBL's payment of petitioner's personal expenses; (4) whether petitioner received, and failed to report, actual dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 13,928 and $ 5,000, respectively; (5) whether petitioner received, and failed to report, imputed interest income during the taxable year *248 1987 in the amount of $ 5,439 based upon below-market interest-rate loans to BBL; (6) whether petitioner is liable for additions to tax for fraud under section 6653(b)(1)(A) and (B) for the taxable years 1986 and 1987; (7) whether petitioner is liable for additions to tax for substantial understatement of income tax liability under section 6661(a) for the taxable years 1986 and 1987; and (8) whether the general, 3-year statute of limitations under section 6501(a) bars assessment and collection of any deficiencies in tax for the taxable years 1986 and 1987. FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. Petitioner resided in Milwaukee, Wisconsin, *249 at the time his petition was filed with the Court. For the sake of clarity, we will first set forth relevant background facts relating to Bee Bus Line, Inc. We will then set forth additional facts relating to a variety of specific matters. Background Facts Relating to Bee Bus Line, Inc.
Bee Bus Line, Inc. (BBL) is a Wisconsin corporation that was incorporated by petitioner in July 1979. From 1979 through 1987, BBL operated a school bus service in the Milwaukee metropolitan area. During this period, BBL's principal client, from whom BBL derived most of its income, was Milwaukee Public Schools. Another of BBL's clients was Heritage Christian Schools. Petitioner was president and a 50-percent shareholder of BBL from the date of its incorporation through 1987. Judith A. Boyd (Boyd) was also an officer (secretary-treasurer) and a 50-percent shareholder of BBL during that period. BBL prepared and filed Federal corporate income tax returns (Forms 1120) for the taxable years 1979 through 1985. BBL prepared, but did not file, Federal corporate income tax returns (Forms 1120) for the taxable years 1986 and 1987. BBL prepared its income tax returns for the taxable years 1979 *250 through 1987 on a calendar-year basis, using the cash receipts and disbursements method of accounting. BBL's prepared, but unfiled, corporate income tax return for the taxable year 1986 was executed by Boyd on August 1, 1987, as an officer of the corporation. [3] Similarly, BBL's prepared, but unfiled, corporate income tax return for the taxable year 1987 was executed by Boyd on August 1, 1988, as an officer of the corporation. [4] *251 Both returns were discovered by agents of respondent in May 1991 during the execution of a search, made pursuant to a warrant issued by the United States District Court for the Eastern District of Wisconsin, of the business premises of BBL in Milwaukee, Wisconsin. [5]
Additional Facts Relating to BBL's Corporate Income Tax Returns
On its income tax returns for the taxable years 1979 through 1985, and on its prepared, but unfiled, income tax returns for the taxable years 1986 and 1987, BBL reported gross receipts, taxable income (before any NOL deduction), and total tax as follows: Year
Gross receipts
Taxable income
Total tax
1979
$ 104,169
($ 23,089)
--
1980
346,839
6,029 --
1981
448,217
33,805 --
1982
503,627
2,262 --
1983
517,454
12,565 --
1984
629,633
3,848 --
1985
729,610
(21,146)
--
1986
666,787
1,094 --
1987
429,967
(4,383)
--
On Schedule L (Balance Sheets) of its income tax returns for the taxable years 1979 through 1985, and on Schedule L (Balance Sheets) of its prepared, but *252 unfiled, income tax returns for the taxable years 1986 and 1987, BBL reported loans from shareholders, loans to shareholders, capital stock (common stock), paid-in or capital surplus, and unappropriated retained earnings as follows: Loans from shareholders
Loans to shareholders
Year
Jan. 1
Dec. 31 Jan. 1
Dec. 31 1979
[6] n/a  --  n/a
--
1980
--  --  --
--
1981
--  $ 45,345
--
--
1982
$ 45,345
45,564
--
--
1983
45,564
39,209
--
--
1984
39,209
50,606
--
--
1985
50,606
45,808
--
--
1986
45,808
45,860
--
--
1987
45,860
77,160
--
--
[7]Capital stock (common stock) Paid-in/Capital surplus Year
Jan. 1
Dec. 31 Jan. 1
Dec. 31 1979
n/a  $ 30,000
n/a
--
1980
$ 30,000
30,000
--
--
1981
30,000
30,000
--
--
1982
30,000
30,000
--
--
1983
30,000
30,000
--
--
1984
30,000
30,000
--
--
1985
30,000
30,000
--
--
1986
30,000
30,000
--
--
1987
30,000
30,000
--
--
Unappropriated retained earnings
Year
Jan. 1
Dec. 31 1979
n/a  ($ 23,099)
1980
($ 23,099)
(16,934)
1981
(16,934)
16,614 1982
16,614 18,345 1983
18,345 30,980 1984
30,980 38,121 1985
38,121 16,381 1986
16,381 17,758 1987
17,758 18,520 *253 Additional Findings of Fact Relating to Gross Receipts Derived by BBL From Milwaukee Public Schools
During 1984 through 1987, BBL rendered busing services to Milwaukee Public Schools, which paid for the busing services in the form of checks. BBL deposited the checks into its checking account at Bank One (formerly Marine Bank) [8] and recorded the checks as income on its books and records. Consistent with the foregoing, BBL reported the checks as gross receipts on its corporate income tax returns for the taxable years 1984 and 1985, and BBL included the checks in gross receipts on its prepared, but unfiled, corporate income tax returns for the taxable years 1986 and 1987. *254 On its prepared, but unfiled, income tax return for 1986, BBL reported gross receipts in the total amount of $ 666,786.66. BBL's accounts receivable ledger reflects an additional $ 228 of gross receipts from Milwaukee Public Schools for 1986. On its prepared, but unfiled, income tax return for 1987, BBL reported gross receipts in the total amount of $ 429,967.49. BBL's accounts receivable ledger reflects gross receipts from Milwaukee Public Schools for 1987 in the identical amount. Additional Findings of Fact Relating to Gross Receipts Derived by BBL From Heritage Christian Schools
During 1984 through 1987, BBL also rendered busing services to Heritage Christian Schools (Heritage), which paid for the busing services in the form of checks. These checks were neither deposited into BBL's checking account nor recorded as income on BBL's books and records. The checks were also not reported as gross receipts on BBL's corporate income tax returns for the taxable years 1984 and 1985 nor on BBL's prepared, but unfiled, corporate income tax returns for the taxable years 1986 and 1987. Rather, as will be detailed below, the checks were diverted by petitioner to his own use. At *255 all relevant times, petitioner maintained two personal savings accounts at Columbia Savings and Loan Association (Columbia). BBL did not maintain any account at Columbia. During 1984, Heritage issued two checks payable to BBL for busing services in the total amount of $ 14,729. Each of these checks was endorsed by petitioner as "Bee Bus Company/James A. Pittman" and was then cashed by him at Columbia. During 1985, Heritage issued ten checks payable to BBL for busing services in the total amount of $ 76,165.91. Each of these checks was endorsed by petitioner as "Bee Bus Company/James A. Pittman" (or a variation thereof). Eight of these checks, in the aggregate amount of $ 59,362.75, were then cashed by petitioner at Columbia. The remaining two checks, in the aggregate amount of $ 16,803.16, were either cashed or deposited by petitioner at Columbia. During 1986, Heritage issued seven checks payable to BBL for busing services in the total amount of $ 67,241.17. Each of these checks was endorsed by petitioner as "Bee Bus Line/James A. Pittman" (or a variation thereof). All seven of these checks were then cashed by petitioner at Columbia. During 1987, Heritage issued eight checks *256 payable to BBL for busing services in the total amount of $ 79,036.16. Each of these checks was endorsed by petitioner as "Bee Bus Company/James A. Pittman" (or a variation thereof). Seven of these checks, in the aggregate amount of $ 61,956.16, were then cashed by petitioner at Columbia. The remaining check, in the amount of $ 17,080, was deposited by petitioner into his savings account at Columbia. The seven Heritage checks for 1986 that were diverted by petitioner for his own use during 1986 were not reported by petitioner on his income tax return for the taxable year 1986. The eight Heritage checks for 1987 that were diverted by petitioner for his own use during 1987 were not reported by petitioner on his income tax return for the taxable year 1987. Additional Facts Relating to BBL's Park State Bank Account
In August 1979, approximately 1 month after BBL had been incorporated, petitioner opened a checking account on behalf of BBL with the Park State Bank. BBL maintained this account throughout 1986 and 1987. Compared with the level of activity in the checking accounts that BBL maintained with Bank One, there was relatively little activity in the Park State Bank *257 account. Nevertheless, checks payable to BBL for busing services were deposited into the Park State Bank account. However, they were not recorded as income on BBL's books and records. They were also not reported as gross receipts on BBL's prepared, but unfiled, corporate income tax returns for the taxable years 1986 and 1987. Similarly, checks drawn on the Park State Bank account were neither reflected on BBL's books and records nor on BBL's prepared, but unfiled, corporate income tax returns for the taxable years 1986 and 1987. In June 1987, BBL issued a check payable to petitioner in the amount of $ 7,000. The check was drawn by petitioner on behalf of BBL on BBL's Park State Bank account. The check was endorsed by petitioner. Petitioner did not report the proceeds of the check as income on his 1987 income tax return. In November 1987, BBL issued a check payable to cash in the amount of $ 1,000. The check was drawn by petitioner on behalf of BBL on BBL's Park State Bank account. The check was endorsed by petitioner, and it was negotiated at Columbia. Petitioner did not report the proceeds of this check as income on his 1987 income tax return. Additional Facts Relating *258 to the Payment of Personal Expenses
During 1986, six checks, each in the amount of $ 269.37 were drawn on one of BBL's checking accounts at Bank One. During 1987, four checks, each again in the amount of $ 269.37, were drawn on the same checking account at Bank One. In March 1987, BBL issued a check payable to Bank Card Associates in the amount of $ 500. The check was drawn by petitioner on behalf of BBL on BBL's Park State Bank account. Additional Facts Relating to the Payment of Actual Dividends by BBL in 1986
In July 1986, BBL issued a check to petitioner in the amount of $ 2,785.50. The check, drawn by Boyd on behalf of BBL, identifies the payment as a dividend for the month of July 1986. The check was endorsed and negotiated by petitioner. In September 1986, BBL issued another check to petitioner in the amount of $ 2,785.50. The check, drawn by Boyd on behalf of BBL, identifies the payment as a dividend for the month of August. The check was endorsed and negotiated by petitioner. In November 1986, BBL issued another check to petitioner in the amount of $ 2,785.50. The check, drawn by Boyd on behalf of BBL, identifies the payment as a dividend for the month *259 of September. The check was endorsed and negotiated by petitioner. In December 1986, BBL issued a check to petitioner in the amount of $ 5,571 (i.e., twice $ 2,785.50). The check was drawn by Boyd on behalf of BBL and does not identify the nature of the payment. The check was endorsed and negotiated by petitioner. BBL's Dividend Expense ledger identifies the foregoing four checks as dividend checks. The ledger also shows that dividends were paid to Boyd, BBL's other 50-percent shareholder, in the same amounts and on the same dates. For 1986, the foregoing distributions total $ 27,855, as summarized in the following table: Distribution
1986
Petitioner
Boyd
Total
Aug.
$ 2,785.50
$ 2,785.50
$ 5,571
Sept.
2,785.50
2,785.50
5,571
Nov.
2,785.50
2,785.50
5,571
Dec.
5,571.00
5,571.00
11,142
Total
13,927.50
13,927.50
27,855
BBL deducted the foregoing distributions as miscellaneous expenses on its prepared, but unfiled, corporate income tax return for the taxable year 1986. Petitioner did not report any of these distributions that were paid to him as income on his 1986 income tax return. Additional Facts Relating to the Payment of Actual Dividends *260 by BBL in 1987
On December 4, 1987, BBL issued a check to petitioner in the amount of $ 5,000. The check was drawn by Boyd on behalf of BBL. The check stub identifies the payment as a dividend. The check was endorsed and negotiated by petitioner. On December 31, 1987, BBL issued a second check to petitioner in the amount of $ 5,000. The check was drawn by Boyd on behalf of BBL. The check stub does not identify the nature of the payment. The check was endorsed and negotiated by petitioner. BBL's Income Statement for December 31, 1987, discloses the payment of dividends in the amount of $ 20,000. The Income Statement also discloses that this amount was categorized as a "miscellaneous" expense. BBL's Accounts Payable ledger for December 31, 1987, discloses that on December 4, 1987, BBL paid a dividend in the amount of $ 5,000 to petitioner, as well as to BBL's other 50-percent shareholder, Boyd. The same ledger further discloses that on December 31, 1987, BBL again distributed $ 5,000 to petitioner, as well as to Boyd. For 1987, the foregoing distributions total $ 20,000, as summarized in the following table: Distribution 1987
Petitioner
Boyd
Total Dec. 4
$ 5,000
$ 5,000
$ 10,000
Dec. 31
5,000
5,000
10,000
Total
10,000
10,000
20,000
*261 BBL deducted the foregoing distributions as miscellaneous expenses on its prepared, but unfiled, corporate income tax return for the taxable year 1987. Petitioner reported $ 5,000 of these distributions that were paid to him as income on his 1987 income tax return. Additional Facts Relating to Imputed Interest Income
Among the liabilities disclosed by BBL on its balance sheets from 1981 through 1987 were loans from shareholders. As of December 31, 1986, BBL disclosed loans from shareholders in the amount of $ 45,859.77. As of December 31, 1987, BBL disclosed loans from shareholders in the amount of $ 77,159.77. Petitioner did not report any interest income from BBL on his income tax return for the taxable year 1987. Additional Facts Relating to the Receipt of Dividends from Corporations Other Than BBL
During 1986 and 1987, petitioner received dividends from NB Clearing Corporation in the respective amounts of $ 28 and $ 244. Petitioner did not report these dividends as income on his income tax returns for 1986 or 1987. During 1987, petitioner also received a dividend from Oppenheimer & Co., Inc. (Oppenheimer) in the amount of $ 43. Petitioner did not report *262 this dividend as income on his income tax return for 1987. [9]
Additional Facts Relating to Petitioner's Basis in his BBL Stock
BBL was capitalized in August 1979 by two $ 15,000 payments. On its balance sheets, BBL consistently reflected its capital stock at $ 30,000. Also on its balance sheets, BBL never reflected any paid-in or capital surplus. At all relevant times BBL had two 50-percent shareholders. At no relevant time did petitioner's basis in his BBL stock exceed $ 15,000. Additional Facts Relating to BBL's Earnings and Profits
On its prepared, but unfiled, corporate income tax return for 1986, BBL reported taxable income (before any NOL deduction) in the amount of $ 1,094.27. BBL then claimed an NOL *263 deduction in the amount of $ 21,145.78 and reported taxable income of zero. BBL also reported a total tax of zero. Respondent's revenue agent approximated BBL's current year's earnings and profits (E & P), i.e., BBL's E & P for 1986, by revising BBL's taxable income per return to account for obvious errors and then treating taxable income as revised as the equivalent of current year's E & P. The approach was as follows: Taxable income per return
(before NOL deduction)  $ 1,094.27
add: (1) Dividends deducted as
miscellaneous deductions  [10] 27,855.00
(2) Depreciation adjustment
[11] 20,643.69 *264 (3) Unreported gross receipts
from Milwaukee Pub. Schools  228.00
Subtotal
49,820.96
add: Diverted corporate receipts
(Heritage Christian Schools)  [12] 67,241.17
Taxable income, as revised
(before NOL deduction)  117,062.13
On its prepared, but unfiled, corporate income tax return for 1987, BBL reported a loss; i.e., taxable income (before any NOL deduction), in the amount of negative $ 4,382.86. BBL also reported a total tax of zero. Respondent's revenue agent approximated BBL's current year's E & P, i.e., BBL's E & P for 1987, by revising BBL's taxable income per return to account for obvious errors and then treating taxable income as revised as the equivalent of current year's E & P. The approach was as follows: Taxable income per return
(before NOL deduction)  $ (4,382.86)
add:
(1) Dividends deducted as
miscellaneous deductions  [13] 20,000.00 (2) Depreciation adjustment
20,514.01 (3) Additional deduction for repairs
per accounts payable ledger  (345.00)
(4) Additional deduction for interest
expense  [14] (5,439.02)
Subtotal
30,347.13 add: (1) Diverted corporate receipts
(Heritage Christian Schools)  [15] 79,036.16 (2) Diverted corporate receipts
(Park State Bank account)  [16] 8,000.00  Taxable income, as revised
(before NOL deduction)  117,383.29
*265 Additional Facts Relating to Petitioner's 1986 and 1987 Income Tax Returns
Petitioner timely filed a Federal income tax return for the taxable year 1986 on April 15, 1987. On his 1986 return, petitioner reported gross income in the amount of $ 21,032.07. This amount consisted of the following items: Item
Amount Compensation (BBL)
$ 18,000.00
Interest
2,929.06
Dividend (Merrill Lynch)
[17] 56.14
Taxable refund
46.87
Total
21,032.07
*266 Reported interest income included $ 1,700.61 from Columbia; the balance was from two other banking institutions. On his 1986 income tax return, petitioner reported his total income tax liability to be $ 2,180. Petitioner timely filed a Federal income tax return for the taxable year 1987 on April 15, 1988. On his 1987 return, petitioner reported gross income in the amount of $ 16,047.22. This amount consisted of the following items: Item
Amount Interest
$ 3,188.79
Dividend
5,000.00
Taxable refund
329.00
Short-term capital gains
7,529.43
Total
16,047.22
Reported interest included $ 2,129.50 from Columbia; the balance was from two other banking institutions. Neither the payor nor source of the dividend was disclosed on the return. However, respondent has treated the dividend as received from BBL. On his 1987 income tax return, petitioner reported his total income tax liability to be $ 37. Additional Facts Relating to the Notice of Deficiency
On June 6, 1992, respondent mailed the notice of deficiency to petitioner. In the notice of deficiency, respondent determined that: (1) Petitioner received unreported constructive dividends from BBL during the taxable *267 years 1986 and 1987 in the amounts of $ 67,241 and $ 79,036, respectively, based upon the diversion of corporate receipts from Heritage. (2) Petitioner received unreported constructive dividends from BBL during the taxable year 1987 in the amount of $ 8,000 based upon the diversion of corporate receipts from BBL's Park State Bank account. (3) Petitioner received unreported constructive dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 3,896 and $ 2,924, respectively, based upon BBL's payment of petitioner's personal expenses during those years. Specifically, respondent determined that BBL paid the following personal expenses of petitioner: Personal expense of petitioner
1986 1987 11 loan payments to Marine Bank
(Bank One) @ $ 269.37 per month  $ 2,963
--
Real estate tax
933
--
Total
3,896
--
9 loan payments to Marine Bank
(Bank One) @ $ 269.37 per month  --  $ 2,424
VISA bank card payment
--  500
Total
2,924
(4) Petitioner received unreported actual dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 13,928 and $ 5,000, respectively. (5) Petitioner received unreported interest income from *268 BBL during the taxable year 1987 in the amount of $ 5,439 based upon below-market interest-rate loans to BBL. (6) Petitioner received unreported dividends from NB Clearing Corporation during the taxable years 1986 and 1987 in the amounts of $ 28 and $ 244, respectively, and unreported dividends from Oppenheimer & Co., Inc. during the taxable year 1987 in the amount of $ 43. [18]
(7) Petitioner is liable for additions to tax for fraud under sections 6653(b)(1)(A) and (B) and for substantial understatement of income tax liability under section 6661(a) for each of the taxable years 1986 and 1987. ULTIMATE FINDINGS OF FACT Petitioner received, and failed to report, distributions from BBL during the taxable years 1986 and 1987 in the amounts of $ 67,241 and $ 79,036, respectively, based upon the diversion of corporate receipts from Heritage. These distributions are taxable to petitioner as constructive dividends. Petitioner received, and failed to report, distributions from BBL during the *269 taxable year 1987 in the amount of $ 8,000 based upon the diversion of corporate receipts from BBL's Park State Bank account. These distributions are taxable to petitioner as constructive dividends. Petitioner received, and failed to report, distributions from BBL during the taxable years 1986 and 1987 in the amounts of $ 3,896 and $ 2,924, respectively, based upon BBL's payment of petitioner's personal expenses during those years. These distributions are taxable to petitioner as constructive dividends. Petitioner received, and failed to report, distributions from BBL during the taxable years 1986 and 1987 in the amounts of $ 13,928 and $ 5,000, respectively. These distributions are taxable to petitioner as actual dividends. Petitioner received, and failed to report, imputed interest income during the taxable year 1987 in the amount of $ 5,439 based upon below-market interest-rate loans to BBL. A part of the underpayment of tax required to be shown on petitioner's return for each of the taxable years 1986 and 1987 is due to fraud with intent to evade tax. OPINION I. Statute of Limitations: Legal Principles
We begin by addressing the issue of whether the statutory *270 period of limitations on assessment for the taxable years 1986 and 1987 had expired prior to the mailing of the notice of deficiency. As a general rule, any deficiency in income tax must be assessed within 3 years after an individual files his or her income tax return. Sec. 6501(a). In this instance, petitioner has shown that the notice of deficiency was issued to him after the expiration of the 3-year period set forth in section 6501(a). Accordingly, petitioner has established a prima facie case that respondent is barred from assessing any deficiency for either of the taxable years in issue. Respondent relies upon the provisions of section 6501(c)(1) and (e)(1)(A) to support the proposition that the notice of deficiency was issued in a timely manner and that therefore the period of limitations on assessment has not expired. Section 6501(c)(1), which is the so-called false return exception to the general 3-year period of limitations, provides an unlimited period of assessment for any year for which a taxpayer filed a false or fraudulent return with the intent to evade tax. Section 6501(e)(1)(A) provides a 6-year period of limitations in the event that a taxpayer omits from gross *271 income an amount properly includable therein that is in excess of 25 percent of the amount of gross income actually reported on the return. Respondent bears the burden of proof with respect to each of the foregoing exceptions to the general 3-year period of limitations on which she relies. Sec. 7454(a); Rule 142(b); Reis v. Commissioner, 1 T.C. 9, 12-13 (1942), affd. 142 F.2d 900 (6th Cir. 1944). Accordingly, in deciding whether the statutory period of limitations has been extended under section 6501(e)(1)(A) due to a substantial omission from gross income, we consider only those amounts which respondent has affirmatively proven to have been omitted from, and to have been properly includable in, petitioner's gross income during the taxable years in issue. A. Statute of Limitations: Taxable Year 1986
On his timely filed income tax return for 1986, petitioner reported gross income in the amount of $ 21,032.07. Twenty-five percent of that amount is $ 5,258. As we shall discuss more thoroughly in section III, infra, petitioner received, and failed to report, distributions from BBL during the taxable year 1986 in *272 the amount of $ 67,241 based upon the diversion of corporate receipts from Heritage. Funds diverted by a stockholder are generally treated as constructive dividends subject to the provisions of sections 301(c) and 316. See James v. United States, 366 U.S. 213 (1961); Truesdell v. Commissioner, 89 T.C. 1280 (1987). Despite petitioner's arguments to the contrary, at least an amount in excess of $ 5,258 is taxable to petitioner as a constructive dividend because respondent has proven that at least that amount of the diverted income represents current E & P of BBL. Sec. 316(a)(2).[19] Even taking into account accrued corporate taxes resulting from the diverted income, as required by Demmon v. United States, 321 F.2d 203 (7th Cir. 1963), an amount in excess of $ 5,258 would represent the current E & P of BBL and would therefore properly be treated as a taxable constructive dividend to petitioner because the highest marginal tax rate on corporations during 1986 was 46 percent. We also note that during 1986 petitioner's investment in BBL was limited to $ 15,000. Accordingly, even if $ 15,000 *273 were a return of capital, the remaining amount of the diverted income, subject to the limitation of Demmon v. United States, supra, would constitute current E & P of BBL and would be treated as a constructive dividend to petitioner. This amount would also be in excess of $ 5,258. Moreover, petitioner received, and failed to report, distributions from BBL during the taxable year 1986 in the amount of $ 13,928. These distributions are taxable to petitioner as actual dividends. See infra sec. III and VI.A. Petitioner also received, and failed *274 to report, unreported dividends from NB Clearing Corporation in the amount of $ 28. This amount is taxable to petitioner. Because we conclude that respondent has proven that petitioner failed to report at least an amount in excess of $ 5,258 of income properly includable on his 1986 return, the 6-year period of limitations applies. Sec. 6501(e)(1)(A). Accordingly, the notice of deficiency for 1986, which was mailed on June 6, 1992, was issued in a timely fashion. B. Statute of Limitations: Taxable Year 1987
On his timely filed income tax return for 1987, petitioner reported gross income in the amount of $ 16,047.22. Twenty-five percent of that amount is $ 4,012. As we shall discuss more thoroughly in section III., infra, petitioner received, and failed to report, distributions from BBL during the taxable year 1987 in the amount of $ 79,036, based upon the diversion of corporate receipts from Heritage. As noted above, funds diverted by a stockholder are generally treated as constructive dividends subject to the provisions of sections 301(c) and 316. See James v. United States, supra; Truesdell v. Commissioner, supra. *275 Despite petitioner's arguments to the contrary, at least an amount in excess of $ 4,012 is taxable to petitioner as a constructive dividend because respondent has proven that at least that amount of the diverted income represents current E & P of BBL. Sec. 316(a)(2). Even taking into account accrued corporate taxes resulting from the diverted income, as required by Demmon v. United States, supra, an amount in excess of $ 4,012 would represent current E & P of BBL and would therefore properly be treated as a taxable constructive dividend to petitioner because the highest marginal tax rate on corporations during 1987 was 46 percent. We also note that during 1987, as in 1986, petitioner's investment in BBL was limited to $ 15,000. Accordingly, even if $ 15,000 were not recovered in 1986 and were a return of capital in 1987, the remaining amount of the diverted income, subject to the limitation of Demmon v. United States, supra, would constitute current E & P of BBL and would therefore be treated as a constructive dividend to petitioner. This amount would also be in excess of $ 4,012. Moreover, petitioner received, *276 and failed to report, distributions from BBL during the taxable year 1987 in the amount of $ 8,000 based upon the diversion of corporate receipts from BBL's Park State Bank account. These distributions are also taxable to petitioner as constructive dividends. See infra secs. III and IV. Petitioner also received, and failed to report, distributions from BBL during the taxable year 1987 in the amount of $ 5,000. These distributions are taxable to petitioner as actual dividends. See infra secs. III and VI.B. Additionally, petitioner received, and failed to report, dividends from NB Clearing Corporation and from Oppenheimer during the taxable year 1987 in the respective amounts of $ 244 and $ 43. Because we conclude that respondent has proven that petitioner failed to report at least an amount in excess of $ 4,012 of income properly includable on his 1987 return, the 6-year period of limitations applies. Sec. 6501(e)(1)(A). Accordingly, the notice of deficiency for 1987, which was mailed on June 6, 1992, was issued in a timely fashion. II. Burden of Proof: Deficiency Determinations
Because respondent has proven, for each of the years in issue, that petitioner *277 omitted from gross income an amount properly includable therein that exceeds 25 percent of the amount of gross income reported in each such return, petitioner must prove that respondent's deficiency determinations are erroneous. Rule 142(a); see also Cleveland v. Commissioner, T.C. Memo. 1983-585. At the time of trial, petitioner was the subject of a criminal investigation. He therefore asserted a valid claim of privilege against self-incrimination under the Fifth Amendment, and did not testify. However, even a valid claim of the Fifth Amendment privilege is not a "substitute for evidence that would assist in meeting a burden of production". Petzoldt v. Commissioner, 92 T.C. 661, 684 (1989), (quoting United States v. Rylander, 460 U.S. 752, 758 (1983)). To adopt such a view "would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." Id.
III. Diversion of Corporate Receipts from *278 Heritage Christian Schools
Respondent determined that petitioner received unreported constructive dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 67,241 and $ 79,036, respectively, based upon the diversion of corporate receipts from Heritage. Petitioner contends: (1) The income from Heritage was never removed from corporate solution and therefore could not have been diverted by petitioner; (2) BBL had insufficient E & P to support the distribution of dividends to the extent determined by respondent; and (3) amounts in excess of E & P should be treated as recovery of capital. We begin by addressing petitioner's first contention. During 1984 and 1985 BBL rendered busing services to Heritage. Heritage paid for these services by check. No checks from Heritage were deposited into BBL's checking account or recorded in BBL's books and records. By contrast, during those years, BBL recorded in its books and records the checks it received from Milwaukee Public Schools for busing services. BBL also reported these checks as gross receipts on the corporate income tax returns that it filed for 1984 and 1985. On its prepared, but unfiled, income tax return *279 for 1986, BBL reported gross receipts in the total amount of $ 666,786.66. BBL's accounts receivable ledger reflects an additional $ 228 of gross receipts from Milwaukee Public Schools for 1986. On its prepared, but unfiled, income tax return for 1987, BBL reported gross receipts in the total amount of $ 429,967.49. BBL's accounts receivable ledger reflects gross receipts from the Milwaukee Public Schools for 1987 in the identical amount. During 1986, Heritage issued seven checks to BBL for busing services in the total amount of $ 67,214.17. Heritage issued eight more checks for busing services to BBL in 1987, in the total amount of $ 79,036.16. Petitioner endorsed all of the Heritage checks and either cashed or deposited them into a personal savings account at Columbia, where BBL did not maintain any account. Unlike the payments from Milwaukee Public Schools, the payments from Heritage were neither recorded as income in BBL's accounts receivable ledger nor reported on the prepared but unfiled returns for the years in issue. In fact, these payments were not reflected anywhere in BBL's books and records. We conclude on the basis of this evidence that the income from Heritage *280 was diverted by petitioner and converted to his personal use. As discussed above, when a stockholder diverts corporate funds, such diverted funds are generally treated as constructive dividends subject to the provisions of sections 301(c) and 316. See James v. United States, 366 U.S. 213 (1961); Truesdell v. Commissioner, 89 T.C. 1280 (1987). In Truesdell, we observed the following: Under sections 301(c) and 316(a), dividends are taxable to the shareholder as ordinary income to the extent of the earnings and profits of the corporation, and any amount received by the shareholder in excess of earnings and profits is considered as a nontaxable return of capital to the extent of the shareholder's basis in his stock. Any amount received in excess of both earnings and profits of the corporation and the shareholder's basis in his stock is treated as gain from the sale or exchange of property. [Truesdell v. Commissioner, supra at 1294-1295; fn. refs. omitted.]
Petitioner's second contention is that BBL had insufficient E & P to support the distribution of dividends during the *281 years in issue to the extent determined by respondent. We have addressed this issue in part in our discussion of whether respondent issued the notice of deficiency in a timely fashion for the years in issue. See supra sec. I. We concluded that because petitioner diverted the payments made by Heritage to BBL, respondent had demonstrated that BBL had sufficient current E & P during the years in issue to support the distribution of unreported dividends to petitioner in an amount in excess of 25 percent of the amount that petitioner reported as gross income during both years in issue. Accordingly, we held that the statutory period of limitations for both years in issue had been extended and that the notice of deficiency had been issued in a timely fashion. Petitioner therefore bears the burden of proving that the amount of respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Specifically, petitioner bears the burden of proving that BBL had insufficient E & P to support the distribution of dividends, to the extent determined by respondent, during the years in issue. Hagaman v. Commissioner, T.C. Memo. 1987-549, *282 affd. and remanded, 958 F.2d 684 (6th Cir. 1992); Malicki v. Commissioner, T.C. Memo. 1988-559, affd. sub nom. Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374 (7th Cir. 1990); Rescigno v. Commissioner, T.C. Memo. 1991-479. Section 316 defines dividends by reference to E & P, and in so doing specifically distinguishes between current and accumulated E & P. As relevant, the section provides as follows: (a) General Rule. -- For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders -- (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.
Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently *283 accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection. [Sec. 316(a) and (b).]
In advancing the argument that BBL had insufficient E & P to sustain the distribution of dividends to the extent determined by respondent, petitioner relies heavily on Demmon v. United States, 321 F.2d 203 (7th Cir. 1963). In that case, the Court of Appeals for the Seventh Circuit held that a corporation employing the cash method of accounting for computing its taxable income may nonetheless exclude from E & P accrued but unpaid corporate taxes attributable to diverted income. [20] Respondent did not take into account accrued but unpaid corporate taxes when calculating BBL's E & P.
*284 Petitioner did not introduce an alternate calculation of BBL's E & P. Moreover, respondent utilized a conservative approach (except for failing to account for accrued but unpaid corporate taxes) to calculate petitioner's E & P during the years in issue. Accordingly, and in light of the fact that (as observed above) most of the diverted Heritage income would, despite the application of Demmon v. Commissioner, supra, be included in the calculation of BBL's current E & P, petitioner must accept responsibility for his failure to introduce evidence of BBL's E & P. This deficiency in the record precludes the Court from concluding that BBL had insufficient current or accumulated E & P to sustain the distribution of dividends to the extent determined by respondent. [21]
*285 Accordingly, we sustain respondent's determinations regarding both the amounts of the Heritage income diverted by petitioner and its treatment as a constructive dividend. IV. Diversion of Corporate Receipts from BBL's Park State Bank Account
Respondent determined that petitioner diverted receipts from BBL's Park State Bank account during 1987 in the total amount of $ 8,000. In August 1979, approximately 1 month after BBL had been incorporated, petitioner opened a checking account on behalf of BBL with the Park State Bank. BBL maintained this account throughout 1986 and 1987. Checks payable to BBL for busing services were deposited into the Park State Bank account. However, they were not recorded as income on BBL's books and records nor were they reported as gross receipts on BBL's prepared, but unfiled, corporate income tax returns for the taxable years 1986 and 1987. Similarly, checks drawn on the Park State Bank account were reflected neither on BBL's books and records nor on BBL's prepared, but unfiled, corporate income tax returns for the taxable years 1986 and 1987. In June 1987, BBL issued a check payable to petitioner in the amount of $ 7,000. The check was *286 drawn by petitioner on behalf of BBL on BBL's Park State Bank account. The check was also endorsed by petitioner. Petitioner did not report the proceeds of the check as income on his 1987 income tax return. In November 1987, BBL issued a check payable to cash in the amount of $ 1,000. The check was drawn by petitioner on behalf of BBL on BBL's Park State Bank account. The check was endorsed by petitioner, and was negotiated at Columbia. Petitioner did not report the proceeds of this check as income on his 1987 income tax return. We are persuaded that these amounts, totaling $ 8,000, were diverted to petitioner's personal use. Accordingly, we sustain respondent's determination for both years with respect to the amounts diverted from BBL's Park State Bank account. V. BBL's Payment of Petitioner's Personal Expenses
Respondent determined that petitioner received, and failed to report, constructive dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 3,896 and $ 2,924, respectively, based upon BBL's payment of petitioner's personal expenses. In 1986, six checks, each in the amount of $ 269.37, were drawn on one of BBL's checking accounts at Bank *287 One. In 1987, four checks, each again in the amount of $ 269.37, were drawn on the same account. Respondent determined that, during 1986, BBL had made 11 monthly loan payments, each in the amount of $ 269.37, on petitioner's behalf. Respondent also determined that, during 1987, BBL had made 9 monthly loan payments, again in the amount of $ 269.37, on petitioner's behalf. In March 1987, BBL issued a check payable to Bank Card Associates in the amount of $ 500. The check was drawn by petitioner on behalf of BBL on BBL's Park State Bank account. The evidence introduced by respondent tends to support the determination that the payments by BBL were made on behalf of petitioner and were constructive dividends to petitioner. Petitioner bears the burden of proving that respondent's determinations are erroneous. Rule 142(a); see also Cleveland v. Commissioner, T.C. Memo. 1983-585. Petitioner has failed to offer any evidence to counter respondent's determination with respect to these payments by BBL. He has therefore failed to carry his burden of proof, and we therefore sustain respondent's determination as to these payments. VI. Actual Dividends *288 from BBL
Respondent determined that petitioner received, and failed to report, actual dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 13,928 and $ 5,000, respectively. A. Actual Dividends to Petitioner from BBL in 1986
In July 1986, BBL issued a check to petitioner in the amount of $ 2,785.50. The check, drawn by Boyd on behalf of BBL, identifies the payment as a dividend for the month of July 1986. The check was endorsed and negotiated by petitioner. In September 1986, BBL issued another check to petitioner in the amount of $ 2,785.50. The check, drawn by Boyd on behalf of BBL, identifies the payment as a dividend for the month of August. The check was endorsed and negotiated by petitioner. In November 1986, BBL issued another check to petitioner in the amount of $ 2,785.50. The check, drawn by Boyd on behalf of BBL, identifies the payment as a dividend for the month of September. The check was endorsed and negotiated by petitioner. In December 1986, BBL issued a check to petitioner in the amount of $ 5,571 (i.e., twice $ 2,785.50). The check was drawn by Boyd on behalf of BBL and does not identify the nature of the payment. The *289 check was endorsed and negotiated by petitioner. BBL's Dividend Expense ledger identifies the foregoing four checks as dividend checks. The ledger also shows that dividends were paid to Boyd, BBL's other 50-percent shareholder, in the same amounts and on the same dates. For 1986, the foregoing distributions total $ 27,855, as summarized in the following table: Distribution
1986
Petitioner
Boyd
Total
Aug.
$ 2,785.50
$ 2,785.50
$ 5,571
Sept.
2,785.50
2,785.50
5,571
Nov.
2,785.50
2,785.50
5,571
Dec.
5,571.00
5,571.00
11,142
Total
13,927.50
13,927.50
27,855
BBL deducted the foregoing distributions as miscellaneous expenses on its prepared, but unfiled, corporate income tax return for the taxable year 1986. Petitioner did not report any of these distributions that were paid to him as income on his 1986 income tax return. The evidence introduced by respondent persuades us that actual dividends in the amount of $ 13,927.50 were paid to petitioner by BBL during 1986. We therefore sustain respondent's determination with respect to this issue. B. Actual Dividends to Petitioner from BBL in 1987
On December 4, 1987, BBL issued a check to petitioner *290 in the amount of $ 5,000. The check was drawn by Boyd on behalf of BBL. The check stub identifies the payment as a dividend. The check was endorsed and negotiated by petitioner. On December 31, 1987, BBL issued a second check to petitioner in the amount of $ 5,000. The check was drawn by Boyd on behalf of BBL. The check stub does not identify the nature of the payment. The check was endorsed and negotiated by petitioner. BBL's Income Statement for December 31, 1987, discloses the payment of dividends in the amount of $ 20,000. BBL's December 1987 distributions are summarized in the following table: Distribution 1987
Petitioner
Boyd
Total Dec. 4
$ 5,000
$ 5,000
$ 10,000
Dec. 31
5,000
5,000
10,000
Total
10,000
10,000
20,000
BBL deducted the foregoing distributions as miscellaneous expenses on its prepared, but unfiled, corporate income tax return for the taxable year 1987. Petitioner reported $ 5,000 as dividend income on his 1987 income tax return. The evidence introduced by respondent persuades us that, in addition to the $ 5,000 dividend reported by petitioner, actual dividends in an additional amount of $ 5,000 were paid to petitioner by *291 BBL during 1987. We therefore sustain respondent's determination with respect to this issue. VII. Imputed Interest Income from BBL in 1987
Respondent determined that petitioner received, but failed to report, imputed interest income during the taxable year 1987 in the amount of $ 5,439 based upon below-market interest-rate loans to BBL. Among the liabilities disclosed by BBL on its balance sheets from 1981 through 1987 were loans from shareholders. As of December 31, 1986, BBL disclosed loans from shareholders in the amount of $ 45,859.77. As of December 31, 1987, BBL disclosed loans from shareholders in the amount of $ 77,159.77. Petitioner did not report any interest income from BBL on his income tax return for the taxable year 1987. Respondent introduced limited evidence to support her determination with respect to the imputed interest income. Nonetheless, the record tends to support the determination, and petitioner failed to present any evidence to counter the determination, and therefore failed to carry his burden of proof. Accordingly, we sustain respondent's determination with respect to this issue. VIII. Additions to Tax for Fraud
Respondent determined *292 that petitioner is liable for the additions to tax for fraud under section 6653(b) for both of the years in issue. She determined that the additions to tax should be applied to the entire amount of each underpayment. In order to establish fraud, respondent must prove, by clear and convincing evidence: (1) The existence of an underpayment of taxes, as defined in section 6653(c)(1); and that (2) some part of the underpayment is due to fraud. Sec. 6653(b)(1); e.g. DiLeo v. Commissioner, 96 T.C. 858, 873, (1991), affd. 959 F.2d 16 (2d Cir. 1992); see sec. 7454(a); Rule 142(b). Respondent's burden on this issue applies independently to each of the two years in issue. Barbuto v. Commissioner, T.C. Memo. 1991-342. Respondent's burden of proof is not satisfied by petitioner's failure to prove error in respondent's determination of the underlying deficiency. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Moreover, a mere suspicion of fraud is insufficient to sustain a finding of fraud. Estate of Mazzoni v. Commissioner, 451 F.2d 197 (3d Cir. 1971), *293 affg. T.C. Memo. 1970-37 and T.C. Memo. 1970-144. For purposes of section 6653 and 6501(c), and as relevant herein, an "underpayment" means a "deficiency" as defined in section 6211. [22] As discussed above, respondent has clearly satisfied the first prong of this test. In order to establish fraudulent intent, respondent must show that petitioner intended to evade taxes, which he knew or believed were owed, by conduct intended to conceal, mislead, or otherwise prevent the collection thereof. E.g., Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). The nature of petitioner's intent is a question of fact, to be resolved by consideration of the *294 entire record and petitioner's entire course of conduct. Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988). The Court has developed a nonexhaustive list of "badges of fraud" to determine the existence, or lack, of fraudulent intent. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Included in this list are: (1) The understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) engaging in illegal activities; (8) attempting to conceal activities; and (9) dealings in cash. Id. at 307-308. Other indicia of fraud include a pattern of understating income and the taxpayer's experience and knowledge of the tax laws. Solomon v. Commissioner, 732 F.2d 1459, 1461-1462 (6th Cir. 1984), affg. T.C. Memo. 1982-603. On the basis of the record before us, and for the reasons that we shall discuss, we conclude that respondent *295 has proven by clear and convincing evidence that some part of the underpayment in each of the years in issue is due to fraud. [23] As respondent has proven that some part of the underpayment in each year is due to fraud, the addition to tax applies to the entire amount of the underpayments, except with respect to the portion thereof that petitioner establishes is not attributable to fraud. Sec. 6653(b)(2). Therefore, we now consider which parts of the underpayments in each year are due to fraud. A. Corporate Receipts Diverted from Heritage Christian Schools
Many of the same facts that persuade us that petitioner *296 diverted corporate receipts from Heritage also persuade us that in so doing he intended to evade taxes, that he knew or believed were owed, by conduct intended to conceal, mislead, or otherwise prevent the collection thereof. Stoltzfus v. United States, supra at 1004. Many badges of fraud exist with respect to the Heritage income. Specifically: (1) Petitioner significantly understated his income by excluding the amounts he diverted to his personal use from Heritage; (2) petitioner did not maintain records of the amounts diverted to his personal use; (3) as a 50-percent shareholder and president of BBL, petitioner failed to cause BBL to file corporate income tax returns for 1986 and 1987; (4) petitioner's contention that the amounts paid by Heritage to BBL never left corporate solution is, in light of the fact that these amounts were never recorded in BBL's books and records and were never reflected on BBL's prepared but unfiled corporate returns, implausible and unpersuasive; and (5) petitioner unsuccessfully attempted to conceal this income by devising a scheme pursuant to which he cashed the checks from Heritage, purportedly on behalf of BBL, *297 but then diverted the income to his own use, without ever reflecting the amount from Heritage in either BBL's corporate income or his own personal income. Bradford v. Commissioner, supra at 307-308. We find particularly persuasive this last fact, namely that petitioner devised a scheme pursuant to which he cashed checks from Heritage and then diverted them to his own use without ever recording or reporting them. Through this scheme, petitioner actively attempted to avoid taxation of this income, both at the corporate and individual levels. Further evidence, both of petitioner's efforts to conceal the Heritage income and of his knowledge that tax was due on these amounts, is found in the treatment by BBL of the income from Milwaukee public schools. This treatment differed markedly from treatment of the income from Heritage. Payments to BBL by Milwaukee public schools were deposited into BBL's account at Bank One and recorded as income on its books and records. Moreover, BBL included the payments in gross receipts on its prepared, but unfiled, corporate income tax returns for the taxable years 1986 and 1987. Finally, petitioner clearly understood *298 that amounts received as dividends from BBL were subject to taxation, as he did in fact include a small percentage of the amount he received as dividends in his taxable income, at least for 1987. Accordingly, based upon the above, we sustain respondent's determination that the addition to tax for fraud applies to the underpayments attributable to the amounts diverted by petitioner from Heritage. B. Corporate Receipts Diverted from BBL's Park State Bank Account
Many of the same facts that persuade us that the additions to tax for fraud apply to the amounts diverted by petitioner in 1987 from BBL's Park State Bank account. The same badges of fraud exist. For example, and significantly, the amounts diverted from BBL's Park State Bank account were neither recorded as income in BBL's books and records nor were they reported on BBL's prepared, but unfiled, corporate income tax return for 1987. Moreover, these amounts were not reported as income on petitioner's individual income tax return for 1987. These facts, combined with petitioner's entire course of conduct, lead us to sustain respondent's determination that the additions to tax for fraud apply to the underpayment attributable *299 to the amounts diverted by petitioner in 1987 from BBL's Park State Bank account. C. BBL's Payment of Petitioner's Personal Expenses
Petitioner has failed to establish that the portion of the underpayment in each year attributable to BBL's payment of petitioner's personal expenses was not due to fraud. Therefore, we must sustain respondent's determination that the additions to tax for fraud apply to the underpayments attributable to these amounts. D. Actual Dividends to Petitioner from BBL
Petitioner received actual dividends from BBL during the taxable years 1986 and 1987 in the amounts of $ 13,928 and $ 10,000, respectively. Of these amounts, petitioner reported only $ 5,000 in 1987. As a 50-percent shareholder and president of BBL, petitioner was undoubtedly aware that he had an obligation to report dividends as income and that the $ 13,928 he received in 1986, as well as the $ 10,000 he received in 1987, were in fact distributed as dividends. These facts, combined with petitioner's entire course of conduct, lead us to sustain respondent's determination that the underpayments attributable to the unreported actual dividends are due to fraud. E. Imputed Interest *300 Income from BBL in 1987
We sustained respondent's determination on this issue both because the evidence tended to support her determination and because petitioner failed to carry his burden of proving that respondent's income determination was erroneous. We are persuaded, in light of the technical intricacies of section 7872, that petitioner did not intend to evade taxes which he knew or believed were owed, by conduct intended to conceal, mislead, or otherwise prevent the collection thereof. E.g., Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Accordingly, we do not sustain respondent's determination that the underpayment attributable to the unreported imputed interest income is due to fraud. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). F. Unreported Dividends from Sources Other Than BBL
Petitioner concedes that he received, but failed to report, dividends from NB Clearing Corporation during the taxable years 1986 and 1987 in the amounts of $ 28 and $ 244, respectively. Petitioner also concedes that he received, and failed to report, dividends from Oppenheimer & Co., Inc. during the taxable *301 year 1987 in the amount of $ 43. We are persuaded that petitioner's failure to report these items was the result of oversight rather than fraudulent intent. Accordingly, we do not sustain respondent's determination that the underpayments attributable to these items were due to fraud. IX. Additions to Tax for Substantial Understatement
Respondent determined that petitioner was liable for an addition to tax for substantial understatement of income tax liability under section 6661(a) for each of the taxable years in issue. Under section 6661(a), an addition to tax equal to 25 percent of any underpayment of tax attributable to a substantial understatement applies to assessments after October 21, 1986. Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). An understatement may be reduced to the extent that it is (1) based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2). Petitioner bears the burden of proving that substantial *302 authority exists or that the facts pertaining to the understatement were adequately disclosed. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Respondent determined deficiencies in the amounts of $ 35,488 and $ 32,881 for the taxable years 1986 and 1987, respectively. On his 1986 income tax return, petitioner reported his total income tax liability to be $ 2,180. On his 1987 income tax return, petitioner reported his total income tax liability to be $ 37. The amounts of the understatements for both years far exceed 10 percent of the tax required to be shown on petitioner's returns for those years. Petitioner does not contend that the understatements were either based on substantial authority adequately disclosed in the returns or in statements attached to the returns. Instead, petitioner relies on the already discredited theory that no deficiencies exist in either year. Accordingly, respondent's determination that petitioner is liable for additions to tax under section 6661(a) based on the entire amount of the deficiency for each of the years in issue is sustained. X. Conclusion
In order to give effect to the foregoing, Decision *303 will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on $ 35,488.↩
2. 50 percent of the interest due on $ 32,818.↩
2. Petitioner concedes that he received, and failed to report, dividends from NB Clearing Corporation during the taxable years 1986 and 1987 in the amounts of $ 28 and $ 244, respectively. Petitioner also concedes that he received, and failed to report, dividends from Oppenheimer & Co., Inc. during the taxable year 1987 in the amount of $ 43.↩
3. Attached to BBL's prepared, but unfiled, income tax return for 1986 is Form 7004 (Application for Automatic Extension of Time to File Corporation Income Tax Return). By its printed terms, Form 7004 serves to request an automatic 6-month extension of time to file. The form is executed by Boyd as secretary-treasurer and is dated March 13, 1987.↩
4. Attached to BBL's prepared, but unfiled, income tax return for 1987 is Form 7004 (Application for Automatic Extension of Time to File Corporation Income Tax Return). By its printed terms, Form 7004 serves to request an automatic 6-month extension of time to file. The form is executed by Boyd as secretary-treasurer and is dated March 15, 1988.↩
5. The returns that were discovered by respondent's agents were original returns. Both are typewritten. The return for 1986 bears the familiar "CAR-RT SORT" IRS computer-generated label, identifying the name, address, employer-identification number, and taxable year of the taxpayer, as well as various IRS processing codes.↩
6. BBL was incorporated in July 1979.↩
7. BBL issued only common stock and did not issue any preferred stock.↩
8. During 1984 through 1987, BBL maintained checking account number XXXX-8907 maintained checking account number XXXX-8907 at Bank One (formerly Marine Bank). From Jan. 1986 through Jan. 1987, BBL maintained a second checking account (number XXXX-6094 maintained a second checking account (number XXXX-6094) at Bank One.↩
9. As previously stated in note 2, petitioner concedes that he received, and failed to report, the foregoing dividends from NB Clearing Corporation and Oppenheimer & Co., Inc. The omission of this income remains relevant for purposes of the additions to tax under sec. 6653(b)(1)(A) and (B)↩.
10. See discussion, supra↩, under the heading "Additional Facts Relating to the Payment of Actual Dividends by BBL".
11. Respondent's revenue agent adjusted BBL's depreciation deduction as claimed on its return in order to reflect the sale of personalty in 1986. Respondent did not otherwise adjust BBL's depreciation deduction. Thus, for example, respondent's revenue agent did not adjust BBL's depreciation in order to reflect the straight-line method as required by sec. 312(k).↩
12. See discussion, supra↩, under the heading "Additional Findings of Fact Relating to Gross Receipts Derived by BBL from Heritage Christian Schools.
13. See discussion, supra↩, under the heading "Additional Facts Relating to the Payment of Actual Dividends by BBL".
14. See discussion, supra↩, under the heading "Additional Facts Relating to Imputed Interest Income".
15. See discussion, supra↩, under the heading "Additional Findings of Fact Relating to Gross Receipts Derived by BBL from Heritage Christian Schools".
16. See discussion, supra↩, under the heading "Additional Findings of Fact Relating to the Park State Bank Account".
17. This amount is net of the sec. 116 exclusion for 1986.↩
18. See supra↩ notes 2, 9.
19. Respondent does not appear to have specifically distinguished between current and accumulated E & P in her calculations. The distinction is relevant because current E & P may exist in a year when no accumulated E & P exists as long as a corporation has income. Sec. 316↩. Respondent has established, through her documentation of petitioner's diversion of funds from BBL, that BBL had significant current E & P during the years in issue.
20. Petitioner argues that Demmon v. Commissioner, 321 F.2d 203↩ (7th Cir. 1963) also permits a cash method corporate taxpayer to accrue additions to tax. We read the holding as being limited to only accrued Federal income tax.
21. Our conclusion on this point makes it unnecessary to address in any detail petitioner's argument regarding recovery of capital. Nonetheless, we again note that the record reflects that at no time between BBL's incorporation and Dec. 31, 1987, did petitioner have capital in excess of $ 15,000 invested in BBL.↩
22. As relevant herein, sec. 6211(a)↩ defines a "deficiency" as "the amount by which the tax imposed * * * exceeds * * * the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon."
23. After the briefs were filed in this case, respondent moved the Court to reopen the record in order to offer evidence of petitioner's conviction of certain criminal tax offenses. Such evidence, if admitted, would relate to the issue of fraudulent intent. Because we reach our conclusions without regard to the convictions, we need not address the merits of respondent's motion and will deny it as moot.↩